UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

                                      Case Nos.  15-20652 & 20-20187
    vs.                              HON.  GEORGE CARAM STEEH

D1 BILLY ARNOLD,

          Defendant.

_____/

OPINION AND ORDER DENYING DEFENDANT'S
RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL[1]

At the close of the government's case following a five week trial, the defendant brought an oral motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(a). The court heard argument on the motion on November 7, 2022. Defendant renewed his oral motion for judgment of acquittal on November 18, 2022, at which time the court permitted the parties to file written briefs. Briefs have been submitted by both parties. For the following reasons defendant's motion is DENIED.

---

[1]Case No. 15-20652-1, ECF Nos. 1865 and 1878; Case No. 20-20187, ECF Nos. 61 and 65.

## LEGAL STANDARD

"After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed R. Crim. P. 29. It is the government's burden to present substantial evidence as to each element of the offenses charged. *Brown v. Davis*, 752 F.2d 1142, 1145 (6th Cir. 1985) (internal citations omitted). "Substantial evidence is more than a scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion. It is evidence affording a substantial basis of fact from which the fact in issue can be reasonably inferred." *United States v. Martin*, 375 F.2d 956, 957 (6th Cir. 1967). "The government may meet its burden through circumstantial evidence alone, and such evidence need not exclude every possible hypothesis except that of guilt." *United States v. Salgado*, 250 F.3d 4338, 446 (6th Cir. 2001) (citing *United States v. Jackson,* 55 F.3d 1219, 1225 (6th Cir. 1995)). "In assessing the sufficiency of the evidence, 'we do not weigh the evidence, assess the credibility of the witnesses, or substitute our judgment for that of the jury.'" *Id.* (citing *United States v. Wright,* 16 F.3d 1429, 1440 (6th Cir. 1994)).

"[A] defendant claiming insufficiency of the evidence bears a heavy burden." *United States v. Maliszewski,* 161 F.3d 992, 1005 (6th Cir.1998). "In reviewing a claim of insufficient evidence, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Salgado*, 250 F.3d at 446 (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)).

## ANALYSIS

To convict a defendant of racketeering conspiracy, the government must prove beyond a reasonable doubt: (i) the existence of a criminal enterprise; (ii) association with the enterprise; (iii) knowing agreement to participate in the conduct of the enterprise; (iv) the defendant and at least one other conspirator agreed that the defendant, or a conspirator, would commit at least two acts of racketeering in furtherance of the enterprise; and (v) the activities affected interstate commerce. *United States v. Fowler*, 535 F.3d 408, 418 (6th Cir. 2008). In his motion for acquittal, defendant argues there was insufficient evidence presented at trial to establish that the Seven Mile Bloods ("SMB") was a criminal enterprise and that SMB's activities affected interstate commerce.

I.      Racketeering Enterprise

The existence of the racketeering enterprise is a required element of the RICO conspiracy offense charged in Count One of the Ninth Superseding Indictment (Case No. 15-20652, ECF No. 1665).  An association-in-fact racketeering enterprise must be "a continuing unit that functions with a common purpose. *United States v. Turkette*, 452 U.S. 576 (1981). It must have at least three structural features: "a purpose, relationships among those associated with the racketeering enterprise, and longevity sufficient to permit these associates to pursue the racketeering enterprises' purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). An association-in-fact enterprise "require[s] a certain amount of organizational structure which eliminates simple conspiracies from the Act's reach." *Ouwinga v. Benistar 419 Plan Services Inc.*, 694 F.3d 783, 794 (6th Cir. 2012).  "Enterprise" and "pattern of racketeering activity" are distinct elements, though the Supreme Court has held that both elements may be proved by the same evidence. *Boyle*, 556 U.S. at 947 (citing *Turkette*, 452 U.S. at 583).

Defendant argues that the government failed to offer sufficient evidence for the jury to find that a group of individuals who identified as SMB had a common purpose, a criminal relationship, and longevity

sufficient to permit them to pursue the enterprise's purpose. Rather,

defendant describes SMB as a group of individuals, many of whom were

childhood friends who lived in the same neighborhood and attended the

same schools.

A. Common Purpose

The Indictment alleges that the SMB had multiple common purposes,

including: (1) maximizing profits for members from illegal activities; (2)

preserving and protecting the power, territory and profits of the enterprise

through the use of intimidation and violence; (3) promoting and enhancing

the enterprise and its members' and associates' activities; and (4) keeping

victims in fear of the enterprise and its members and associates through

violence and threats of violence.

The government presented testimony from cooperating witnesses

Anthony Lovejoy and Derrick Kennedy, who explained that SMB started in

the early 2000s as a Blood gang operating on Detroit's east side, in an area

known as the Red Zone. SMB descended from an older gang known as

Ruthless Clan and identified with the color red. Lovejoy and Kennedy

testified that the first individuals to claim SMB included defendant Billy

Arnold, Robert Brown, Kevin Powell and Donnell Hendrix. A subgroup of

SMB was known as 55, which was made up of the drug dealers within the gang.

Evidence was introduced at trial that SMB members often posted their gang affiliation on social media and had hand signs and tattoos identifying them with SMB, 55 and the Red Zone. SMB also posted photographs and messages identifying and denigrating rival gangs such as the Hustle Boys and other eastside gangs. Billy Arnold, in recorded jail calls, described himself as the CEO and founder of the SMB.

Lovejoy and Kennedy described how SMB members initially sold drugs in the Red Zone. This was corroborated by considerable evidence of SMB members being arrested with drugs and guns in the Red Zone. Lovejoy and Kennedy testified that drugs were sold in the Red Zone to the exclusion of rival gangs. There was also testimony that the drug dealing moved from Detroit to West Virginia because it was more lucrative. Lovejoy explained that if a member or associate of SMB wanted to start selling pills, they would stay with other SMB who had houses in West Virginia. SMB members would use other members to bring pills to West Virginia on the bus or by rental car and then take money back to Detroit. They did this because they trusted fellow gang members. They used each other to help sell pills and would not take a cut of the profit for selling pills for other SMB

members. Devon McClure was paid to guard the money in West Virginia.

Derrick Kennedy testified that co-defendant Jerome Gooch sold pills for

other people. Lovejoy testified that in the drug business you rely on people

you trust, your associates.

Billy Arnold was in prison in the Michigan Department of Corrections

until 2013. Before he was released, Corey Bailey spoke with Arnold and

told him how to sell pills in West Virginia for profit. Lovejoy similarly advised

Arnold on how to sell pills in West Virginia after he was released. Arnold

followed that advice. As jail calls showed, Arnold was gifted cash and

designer clothes by SMB members when he was first released in 2013.

Arnold initially had other SMB sell pills for him in West Virginia while he

was on a tether. Later, continuing through the summer of 2015, Arnold

made trips to West Virginia to sell pills, working with SMB members like

Demetrius Pope, and Derrick Kennedy.

The evidence showed that SMB members and associates were found

together when they were arrested, both in Detroit and in West Virginia. In

most instances, the SMB members and associates were found with drugs

or guns, or both. There is sufficient evidence for the jury to find that these

individuals were working together, sharing information, and pooling

resources so they could make money.

Lovejoy, Kennedy and Matleah Scott described how much money was made by selling pills. The evidence was that Devon McClure would bring home ten thousand dollars each time he went to West Virginia. Derrick Kennedy made $14 profit per pill sold and would sell thousands of pills weekly for a period of at least three years. Kennedy testified that at one time he had $180,000.00 to $230,000.00 in cash from selling pills. The evidence included pictures of SMB members and associates wearing designer clothing and jewelry, driving expensive cars, and spending huge amounts of money on parties. The cooperating witnesses testified that none of the SMB associates had legitimate jobs. Social media posts showed them bragging about what they had purchased with all the money. There was also evidence that they used their money to help each other. Kennedy and Lovejoy testified they gave money to other SMB members and associates so they could start selling drugs, or for bail, or for their prison account.

The court finds there was sufficient evidence for the jury to conclude that SMB members and associates shared the common purpose of selling drugs.

In addition to selling drugs, the government presented evidence that SMB also had the common purpose of confronting and retaliating against

rival gangs by intimation, threats of intimidation, and acts of violence. There was abundant evidence that SMB was engaged in a gang war. For example, when Billy Arnold saw rival gang members at the Lawton parole office on July 14, 2014, he called Corey Bailey. Cell tower evidence and phone records show that Bailey came to the parole office. Shortly thereafter, Arnold and Bailey shot at the vehicle containing the rivals, which resulted in the death of Djuan Page and the non-fatal shooting of Michael Davis.

Further, after SMB member Devon McClure was murdered on May 1, 2015, Billy Arnold went hunting for rival gang members to seek revenge. The evidence showed that Arnold participated in shootings of rival gang members on May 1st, May 8th, May 10th, and June 7th of 2015. More importantly, in each of those shootings, the evidence shows Billy Arnold was with at least one other SMB member or associate.

There was sufficient evidence for the jury to find that SMB members and associates shared the common purpose of confronting and retaliating against rival gangs.

Next, there was evidence of shared firearms among SMB members and associates. The AR-15 that was recovered on September 26, 2015, after a car chase with Billy Arnold and Steven Arthur in the vehicle, was

connected to various shootings. Ballistics expert Rebecca Smith testified

that based on the casings found at the crime scenes, the same gun was

used in the May 1st shooting of Raphael Carter, the May 8th shooting of

Dvante Roberts, Marquis Wicker, Jessie Ritchie and Darrio Roberts, and

the May 10th shooting involving Darnell Canady, Jason Gaskin and Derrick

Peterson. There was also evidence that the .40 caliber casings found at the

scene of the May 10th shooting and the June 7th shooting were shot by the

same gun, although the gun was not recovered.

While defendant points out that the SMBs did not have a clubhouse,

elected leaders, or dues, those things are not necessary for finding a

common purpose. The court finds there is substantial evidence from which

the jury could conclude that the SMB members and associates had the

common purposes as set forth in the Indictment.

B. Criminal Relationship

Defendant argues that the government failed to show sufficient

evidence of a criminal relationship among the SMB members and

associates where, instead, the evidence established that the members of

the group knew each other from growing up in the same neighborhood. In

other words, they were friends who went to the same schools, played ball

and video games together, and hung out.

However, as discussed above, the government put forth evidence at trial showing that SMB members and associates worked together to sell drugs, both in Detroit and in Charleston, West Virginia. Some were arrested together in stash houses, in cars or at the bus station, often with drugs and money. They shared firearms and stored them at each other's homes. They appear in many pictures together, shown using hand signals and making gang signs. They appear in rap videos together. There are text messages between them, and their phone numbers appear on each other's contact lists. They have tattoos with five pointed stars, "SMB" and "55". Some even have the names of fellow SMB members tattooed on their bodies.

The fact that the members and associates of SMB were friends does not detract from the substantial evidence from which the jury could conclude that there were criminal relationships among them.

C. Longevity

The law requires that there be longevity sufficient to permit the individuals to pursue the enterprise's purpose. Defendant argues that the only thing with longevity in this case is the name "SMB." The Indictment alleges that the enterprise existed from at least 2003 to January 3, 2018.

- 11 -

The jury does not need to find that it existed that entire time, just that there was a period that was sufficient to achieve the purposes of the enterprise. There is substantial evidence from which the jury could find that the enterprise existed long enough to permit the associates to pursue the enterprise's purpose.

II.    Substantial Effect on Interstate Commerce

Defendant argues that at best, the government proved that individuals crossed state lines to sell drugs for their own individual gain. However, as discussed above, the government introduced substantial evidence from which the jury could find that the activities of the SMB involved interstate drug dealing, which affected interstate commerce.

CONCLUSION

For the reasons stated above, defendant's Rule 29 motion for judgment of acquittal is DENIED.

It is so ordered.

Dated:  February 21, 2023

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

- 13 -

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record
on February 21, 2023, by electronic and/or ordinary mail.

s/Michael Lang
Deputy Clerk